UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSHUA KANE LANZER,

    Plaintiff,

       v.                                                                            No. 3:16-cv-155(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____X

**RULING ON PENDING MOTIONS**

Plaintiff Joshua Kane Lanzer has filed this appeal of the adverse decision of the Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 18]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 19]. The undersigned heard oral argument on March 6, 2017. For the reasons that follow, the Commissioner's decision is affirmed.

**Legal Standard**

The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

1

**Background**

Plaintiff received disability benefits from February 2008 until September 2012 based on a diagnosis of leukemia, for which he received treatment including a bone marrow transplant. The leukemia went into remission in 2010. After a continuing disability review, the Commissioner determined that Plaintiff's health had improved such that he could perform light, unskilled work. Plaintiff was sent notice of the Commissioner's decision to terminate benefits in July 2012 (the "July 2012 Notice"). The July 2012 Notice informed Plaintiff that his final benefits payment would be in September 2012, and of his appeal rights. Plaintiff did not appeal the July 2012 Notice. Plaintiff also did not move to reopen the agency determination to cease benefits.

Plaintiff filed new DIB and SSI applications on January 7, 2013, alleging a disability onset date of August 15, 2012. His claims were denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On June 13, 2014, a hearing was held before administrative law judge Lisa Groeneveld-Meijer (the "ALJ"). Plaintiff and a vocational expert ("VE") testified at the hearing. On August 28, 2014, the ALJ issued a decision denying Plaintiff's claims. The Appeals Council denied review, making the ALJ's unfavorable decision the final decision of the Commissioner. This action followed.

The briefs accompanying the motions outline Plaintiff's medical history. The Court adopts the facts as collectively presented in the briefs and incorporates them by reference herein.

**The ALJ's Decision**

The ALJ followed the sequential evaluation process for assessing disability claims. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 14). At step two, the ALJ found the following severe impairments: cervical disc degeneration; cervical myelopathy; major depressive disorder, recurrent;

generalized anxiety disorder; post-traumatic stress disorder; and attention deficit hyperactivity disorder, inattentive type. (*Id.*). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 14-15). Next, the ALJ determined Plaintiff retains the following residual functional capacity[1]:

> Plaintiff can perform light work. He cannot climb ladders, ropes, or scaffolds. He can frequently climb ramps and stairs, stoop, kneel, and crouch. He can occasionally work overhead. He may need to alternate between siting and standing two or three times per hour for one to two minutes to stretch, or take additional brief, unscheduled breaks of up to five minutes per hour. He can perform simple, routine, repetitive work with few, if any, changes day-to-day, in a work environment free of fast-paced production requirements (such as timed work, belt-paced work, or work with strict quotas). He can have brief and superficial contact with others and no direct contact with the general public on shift.

(R. 15-22). At step four, the ALJ found Plaintiff unable to perform any past relevant work. (R. 22). Finally, at step five, the ALJ relied on the testimony of the VE to conclude that there are jobs in significant numbers in the national economy Plaintiff can perform. (R. 22-23). Specifically, the VE testified that a person with the assessed RFC could perform the positions of laundry and linen folder, mail room clerk, and delivery marker and router. (R. 23). Accordingly, the ALJ found Plaintiff not to be disabled.

## Discussion

### 1. The July 2012 Determination

At the outset, Plaintiff argues that the Commissioner erred in creating new applications for him in 2013 because he continued to be disabled from the conditions related to the 2008-2012 period of disability. He also argues that, due to his limited cognitive function, he did not

---

[1] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

understand how to appeal the July 2012 Notice. The Commissioner maintains that the prior period of disability is not at issue, and that the court does not have jurisdiction to review the July 2012 Notice terminating benefits for that period.

The July 2012 Notice lists the steps a claimant should take to appeal the termination of benefits. Plaintiff did not exercise those appeal rights. As a result, this Court lacks jurisdiction to review the July 2012 Notice. In other words, the Court cannot review the Commissioner's decision to terminate benefits for the 2008-2012 period of disability. The Social Security Act authorizes judicial review of only a "final decision of the Commissioner of Social Security made after a hearing." *See* 42 U.S.C. § 405g. A claimant must complete an administrative review process in order to obtain a judicially-reviewable final decision. *See Califano v. Sanders*, 430 U.S. 99, 106-109 (1977). Here, Plaintiff did not follow the administrative review process for the July 2012 Notice. As a result, there is no final decision relating to the termination of benefits that this Court can review.

While Plaintiff presents the argument that he lacked the cognitive function to understand his appeal rights, the medical evidence fails to support this contention. The July 2012 Notice explains clearly the steps for appeal. Plaintiff, despite his limited education, can read and write. (R. 37, 223). Plaintiff's history with semi-skilled work, and his ability to be the primary caretaker of his infant daughter, belie a claim of such limited cognitive capacity that he could not understand the notice. (R. 38, 53, 56, 58, 61-62).

Despite the Court's lack of jurisdiction to review the July 2012 Notice, Plaintiff asks the Court to consider his medical history from the 2008-2012 period of disability. He has not, however, given the Court any reason to believe that such records would change the outcome

here.[2]  The 2008-2012 period of disability was based on Plaintiff's diagnosis of leukemia.  It is undisputed that treatment was effective and the condition went into remission.  The DIB and SSI applications filed in 2013 allege disability based on physical pain and mental health issues.  Simply put, the 2013 claim is not related to the prior period of disability.  Plaintiff argues that his anxiety is a result of the leukemia, but the medical records do not support this assertion to the extent that the Court can find that the anxiety and leukemia are part of the same claim for disability.  Further, the ALJ was aware of Plaintiff's medical history prior to the alleged onset date.  At step two, the ALJ acknowledged Plaintiff's history of, and treatment for, leukemia. (R. 14).  She explained that leukemia is not a severe impairment in this case, despite Plaintiff formerly receiving disability benefits due to it, because "the evidentiary record indicates that the claimant's bone marrow transplant was effective and that his leukemia is in remission." (*Id.*).  The ALJ continued:

> The claimant discontinued immunosuppressive therapy in March 2010.  He feels well with only symptoms of dry eyes.  Because the claimant's leukemia is in remission without significant residual symptoms, it does not impose more than minimal functional limitations.  Therefore, Plaintiff's history of leukemia is not a severe impairment in this case.  At the hearing, the claimant asserted that his history of leukemia has contributed to significant anxiety.  The undersigned will more fully discuss the claimant's anxiety below, including the effects of the claimant's leukemia as a stressor aggravating his anxiety.

*Id.*  Plaintiff does not appear to dispute the ALJ's characterization of his medical history.  Rather, he simply maintains that the ALJ should have more fully considered his medical history from the

---

[2] In fact, the regulation upon which Plaintiff relies to make this argument is not applicable to Plaintiff's case.  Plaintiff cites to 20 C.F.R. § 404.1593 in support of his position that the ALJ was required to consider the evidence in his prior claim file.  This regulation pertains to medical evidence in *continuing disability cases*, however, and is not relevant to the evidence an ALJ must consider when evaluating a new claim.

2008-2012 period of disability.[3] Without more, the Court cannot credit Plaintiff's contentions. In all, the Court finds that the ALJ appropriately considered Plaintiff's medical history and that her evaluation of the evidence is supported by substantial evidence.

As explained above, the Court is without jurisdiction to review the July 2012 Notice. As such, the relevant evidence here is limited to what was considered by the ALJ in adjudicating the 2013 claim, which became the Commissioner's final decision subject to judicial review.

**2. The ALJ's Decision**

Plaintiff makes only one claim of error regarding the ALJ's decision: he argues the ALJ erred in finding there were jobs he could perform because he is unable to perform work activities on a sustained, full time basis. In support of this argument, Plaintiff relies on a medical source statement completed by his treating psychiatrist, Dr. Awwa. In this statement, Dr. Awwa opines that Plaintiff would "often" have deficiencies of concentration, persistence, or pace, resulting in a failure to complete tasks in a timely manner. (R. 677). He also finds that Plaintiff would likely

---

[3] Plaintiff additionally argues that the ALJ erred in excluding from the record a mental status exam conducted by consultative examiner Dr. Selden in 2012. He contends that under 20 C.F.R. § 404.1512, the Commissioner must develop a claimant's complete medical history for "at least the 12 months preceding the month in which you file your application…" Because the 2012 exam was conducted within 12 months of the alleged onset date, Plaintiff avers it should have been included. Plaintiff's argument does not take into account the rest of the regulation, however; the 12 month requirement does not apply when, as here, a claimant's alleged onset date is less than 12 months before the application. 20 C.F.R. § 404.1512(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless … you say that your disability began less than 12 months before you filed your application."). Plaintiff filed his claim on January 7, 2013, alleging an onset date of August 15, 2012, well under the twelve month requirement. Plaintiff's argument is also unpersuasive because the ALJ had before her a second mental status exam conducted by Dr. Selden in 2013. In the 2013 report, Dr. Selden references the 2012 exam, and notes either consistencies with, or improvement from, it. There is no reason to believe the 2012 exam would change the outcome here.

be absent from work "about one day per month."[4]  (R. 679).  In addition, Dr. Awwa finds that Plaintiff had no restrictions in understanding, remembering, and carrying out short, simple instructions, and that Plaintiff had only slight difficulties in making judgments on simple, work-related decisions.  (R. 676).  Dr. Awwa further opines that Plaintiff could respond appropriately to supervisors, coworkers, and work pressures in a work setting.  (R. 677).  He also finds that Plaintiff had only slight restrictions on activities of daily living and only slight difficulties in maintaining social functioning.  (*Id.*).  Finally, Dr. Awwa notes that if Plaintiff were to be awarded benefits, he could manage them in his best interest.  (R. 678).  The ALJ gave Dr. Awwa's opinion great weight, reasoning it was consistent with the record as a whole.

The Court finds substantial evidence supports the ALJ's decision that Plaintiff could perform work on a sustained basis.  Plaintiff has not pointed to any medical evidence to substantiate his claim that the limitations in the RFC are insufficient.  Furthermore, Dr. Awwa's opinion is consistent with the nonexertional components of the RFC: Plaintiff could perform simple work with restrictions in the areas of social contact and work pace to address the limitations Dr. Awwa identifies.  Even Dr. Awwa's most restrictive finding, that Plaintiff would "often" have deficiencies of concentration, persistence, or pace, is consistent with the RFC.  The form Dr. Awwa completed defines "often" as a "moderate limitation…but the individual is still

---

[4] Plaintiff moreover contends Dr. Awwa's opinion that Plaintiff would miss one day of work per month conflicts with the VE's testimony that if a person "was not meeting on a regular and consistent basis at least 80 percent of what's considered a competitive standard they would not be kept on a job." (R. 66).  Plaintiff maintains that the ALJ did not resolve the conflict between Dr. Awwa's opinion in this regard and the VE's testimony.  This argument misses the mark: the VE additionally testified that absences not exceeding once per month would be tolerated.  (R. 65).  There is no inconsistency the ALJ needed to resolve.

able to function satisfactorily." (R. 676). In all, the evidence of record, including Dr. Awwa's opinion, supports the ALJ's decision.

## Conclusion

After a thorough review of the administrative record and consideration of the arguments raised by Plaintiff, Plaintiff's motion to reverse [Doc. # 18] is DENIED and the Commissioner's motion to affirm [Doc. # 19] is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED, this  13th  day of March, 2017, at Bridgeport, Connecticut.

                                    */s/ William I. Garfinkel*
                                    WILLIAM I. GARFINKEL
                                    United States Magistrate Judge